THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES M.[1] | : | Case No. 2:23-cv-1155 |
| | : | |
| Plaintiff, | : | District Judge Sarah D. Morrison |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[2]

Plaintiff James M. brings this case challenging the Social Security Administration's denial of his applications for a period of disability, Disability Insurance Benefits, and Supplemental Security Income. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply (Doc. #12), and the administrative record (Doc. #8).

## I. Background

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability" encompasses "any medically determinable physical or mental

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

[2] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

Plaintiff protectively applied for benefits in July 2020, alleging disability commencing January 1, 2020, due to trouble standing, swelling and pain in both feet and ankles, bilateral knee pain and stiffness, cervical degenerative disc disease, chronic headaches, umbilical hernia, diverticulitis, anxiety/depression, high blood pressure, and trouble sleeping. (Doc. #8-5, *PageID* #s 293-303, Doc. #8-6, *PageID* #559). After Plaintiff's applications were denied initially and upon reconsideration, he requested and received a hearing before Administrative Law Judge (ALJ) Nicolas R. Foster.

Thereafter, ALJ Foster issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[3] He reached the following main conclusions:

| | |
|---|---|
| Step 1: | Plaintiff has not engaged in substantial gainful activity since January 1, 2020, the alleged disability onset date. |
| Step 2: | He has the following severe impairments: arthritis, depression, anxiety, obesity, liver disease, kidney disease, and alcohol use disorder. |
| Step 3: | Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | His residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of performing "light work … except he can stand and/or walk up to four hours in an eight-hour day; he can occasionally climb ramps or stairs, stoop, kneel, or crouch, but never climb ladders, ropes, or scaffolds, or balance; he can understand, remember, and carry out simple |

---

[3] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

                instructions and make simple work-related decisions; he can work at a consistent pace throughout the workday but not at a production-rate pace where tasks must be performed quickly; he should have no more than occasional public contact while avoiding tandem work tasks; and he can have no more than occasional changes in routine work setting."

                He is unable to perform any past relevant work.

Step 5:       Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform.

(Doc. #8-2, *PageID* #s 103-11). Based on these findings, the ALJ concluded that Plaintiff has not been under a benefits-qualifying disability from January 1, 2020, through the date of his decision. *Id.* at 111.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #8-2, *PageID* #s 101-11), Plaintiff's Statement of Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #11), and Plaintiff's Reply (Doc. #12). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

**II.**     **Standard of Review**

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

### III. Discussion

Plaintiff asserts that the ALJ failed to explain the supportability and consistency factors relating to the physical medical opinion evidence. (Doc. #9, *PageID* #s 1564-70). Further, Plaintiff contends that the ALJ failed to articulate the basis for relying on a light residual functional capacity (RFC) when the limitations contained in the RFC fell between exertional levels. *Id.* at 1670-74. The Commissioner maintains that substantial evidence supports the ALJ's RFC assessment, evaluation of the medical opinions, and finding that Plaintiff retained the ability to perform work in existing in significant numbers in the national economy. (Doc. #11, *PageID* #s 1580-88).

#### A. Medical Source Opinions

Since Plaintiff filed his applications after March 27, 2017, they are governed by the relatively new regulations describing how evidence is categorized, considered, and articulated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c. A plaintiff's RFC is an assessment of "the most [a plaintiff] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). A plaintiff's RFC assessment must be based on all the relevant evidence in his

4

case file. *Id.* The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)-(5).

Regarding two of these categories—medical opinions and prior administrative medical findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) supportability; (2) consistency; (3) relationship with Plaintiff; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the Social Security Administration's] disability programs policies and evidentiary requirements." § 404.1520c(c)(1)-(5).

Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered. 20 C.F.R. § 404.1520c(b)(2). When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. § 404.1520c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. § 404.1520c(c)(2). An ALJ may discuss how he or she evaluated the other factors but is generally not required to do so. § 404.1520c(b)(2).

5

Thus, while these new regulations are more relaxed than the former rules governing the evaluation of medical opinions, "they still require that the ALJ provide a coherent explanation of his reasoning." *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). At bottom, the new regulations "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (January 18, 2017)).

Plaintiff argues that the ALJ erred in his review of the prior administrative medical findings provided by Abraham Mikalov, M.D., and Lynne Torello, M.D. (Doc. #9, *PageID* #s 1565-66). Dr. Mikalov reviewed Plaintiff's medical records and provided an opinion on his functional limitations in August 2020. (Doc #8-3, *PageID* #s 138-44). Dr. Mikalov opined that Plaintiff is able to lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for a total of six hours in an eight-hour workday; and sit for a total of six hours in an eight-hour workday. *Id.* at 143. Additionally, Plaintiff can frequently kneel, crouch, and climb ramps and stairs. *Id.* at 143-44. He can never climb ladders, ropes, or scaffolds due to foot and knee pain. *Id.* at 144. Upon reconsideration, in March 2021, Dr. Torello reviewed Plaintiff's records and affirmed Dr. Mikalov's assessment. *Id.* at 160-69.

The ALJ found the opinions of Dr. Mikalov and Dr. Torello to be "persuasive overall."[4] (Doc. #8-2, *PageID* #108). The ALJ concluded that Dr. Mikalov and Dr. Torello's opinions are "generally consistent with the evidence, which shows ongoing physical … impairments that would limit [Plaintiff] to the degree found by DDS." *Id.* He explained that although Plaintiff's impairments were chronic, they were "generally managed conservatively" and "examinations did not show significant loss of functioning." *Id.* Further, the ALJ noted that Plaintiff was able to work part time in a job that required significant standing. *Id.* The ALJ found that Dr. Mikalov and Dr. Torello "provided good support for their findings, in that they clearly explained what evidence was used and how that evidence led to the conclusions they ultimately made." *Id.*

Plaintiff asserts that the ALJ's consistency findings are based on a mischaracterization of the medical evidence. (Doc. #9, *PageID* #1565). Specifically, Plaintiff points to notes from his treating physician, Oludare Ogunsola, D.O., from April 2021. (Doc. #8-8, *PageID* #1199). Plaintiff began treatment with Dr. Ogunsola in July 2019. (Doc. #8-7, *PageID* #s 696-98). In April 2021, Dr. Ogunsola noted that Plaintiff had "moderate to severe ankle arthritis as per radiographs in addition to clinical symptoms." (Doc. #8-8, *PageID* #1199). She indicated that he "has undergone an extensive course of nonoperative treatment options which have not improved his symptoms." *Id*. His treatment included several rounds of corticosteroid injections, bracing, and physical therapy. *Id.*; *see also* Doc. #8-7, *PageID* #s 687-98; Doc. #8-8, *PageID* #s 1194-97. Despite treatment, Plaintiff reported "moderate to severe and debilitating pain" and difficulty

---

[4] The ALJ discussed the opinions of the state agency physicians and psychologists together. As Plaintiff does not challenge the ALJ's assessment of the state agency psychologists' opinions, the undersigned will not address their opinions.

standing without ankle swelling. (Doc. #8-8, *PageID* #1199). Further, Dr. Ogunsola stated that a total ankle arthroplasty was "the only treatment option at this point" but would "require an extensive period of rehabilitation and potentially a change in his job capacity." *Id.* She recommended that Plaintiff "refrain from periods of prolonged standing as this will aggravate his condition." *Id.*

The ALJ discussed Dr. Ogunsola's treatment notes from April 2021. (Doc. #8-2, *PageID* #108). Specifically, the ALJ noted that Plaintiff "reported no particular improvement, although physical examination continued to show generally normal range of motion, muscle strength, and the like[.]" *Id.* (citing Doc. #8-8, *PageID* #s 1198-1200). The records cited to by the ALJ do show that Plaintiff had full range of motion. (Doc. #8-8, *PageID* #1200). However, as Plaintiff correctly observed, the records do not show that Plaintiff had normal muscle strength. *Id.* Instead, Dr. Ogunsola indicated that upon examination, Plaintiff had *poor* strength in both ankles, tibio-talar tenderness, and positive talar tilt. *Id.* Indeed, Dr. Ogunsola consistently noted in August, October, and December 2019 that Plaintiff had an antalgic gait, poor strength in both ankles, tibio-talar tenderness, and positive talar tilt. (Doc. #8-7, *PageID* #s 688, 691-92, 695).

The ALJ similarly mischaracterized the medical records from Plaintiff's primary care provider, Alicia Kammler, CNP. (Doc. #8-2, *PageID* #107). The ALJ noted that, although Plaintiff reported significant pain and swelling in his feet and stated that he could no longer stand on a hard floor for a full workday, "physical examination was almost entirely normal, showing only some non-pitting edema in [Plaintiff's] ankles." *Id.* The ALJ omitted that CNP Kammler specifically noted that Plaintiff had bilateral instability of his ankles. (Doc. #8-8, *PageID* #1151).

8

The ALJ's mischaracterization of the record requires remand in this case. *See, e.g., Johnson v. Comm'r of Soc. Sec.*, No. 2:16-cv-172, 2016 WL 7208783, at *4 (S.D. Ohio Dec. 13, 2016) ("This Court has not hesitated to remand cases where the ALJ engaged in a very selective review of the record and significantly mischaracterized the treatment notes."); *Dalton v. Comm'r of Soc. Sec.*, No. 2:20-CV-3636, 2021 WL 2430939, at *11 (S.D. Ohio June 15, 2021), *report and recommendation adopted*, 2021 WL 2853442 (S.D. Ohio July 8, 2021) (remanding due to factual inaccuracies in ALJ's characterization of treating source's notes); *Kevin W. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-CV-168, 2023 WL 6217098, at *5 (S.D. Ohio Sept. 25, 2023).

Plaintiff also contends that the ALJ erred when addressing the supportability factor. (Doc. #9, *PageID* #1569). Analysis of the supportability factor "focuses on the physician's explanations of [his] opinions" and "whether [the physician] provided support or an evidentiary basis for his medical opinions." *Vaughn v. Comm'r of Soc. Sec.*, No. 20-cv-1119-TMP, 2021 WL 3056108, at *10 (W.D. Tenn. July 20, 2021) (internal quotations omitted). As noted above, the ALJ found that Dr. Mikalov and Dr. Torello "provided good support for their findings, in that they clearly explained what evidence was used and how that evidence led to the conclusions they ultimately made." (Doc. #8-2, *PageID* #108). Substantial evidence does not support that ALJ's supportability finding. Other than their brief summaries of the physical evidence, Dr. Mikalov and Dr. Torello provided very little explanation for their opinions. *See* Doc. #8-3, *PageID* #s 139-40, 161-62. Indeed, when asked to both (1) explain the postural limitations and how and why the evidence supports their conclusions, and (2) cite specific facts upon which their conclusions are based, Dr. Mikalov and Dr. Torello responded, "[Plaintiff] should never [climb] l/r/s [(ladders/ropes/scaffolds)] due to foot and knee pain." (Doc. #8-3, *PageID* #s 144, 165). They

9

did not provide any explanation for Plaintiff's other postural limitations or cite to any specific evidence. Thus, contrary to the ALJ's conclusion, Dr. Mikalov and Dr. Torello did not clearly explain what evidence they used and how that evidence led to their conclusions. Accordingly, because substantial evidence does not support the ALJ's supportability findings, the ALJ's decision must be reversed and remanded for further proceedings to properly analyze their opinions pursuant to 20 C.F.R. § 404.1520c.

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[5]

**B.     Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may

---

[5] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to a remand to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his applications should be granted.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Plaintiff's Statement of Errors (Doc. #9) be **GRANTED**;

2. The Commissioner's non-disability finding be **VACATED**;

3. No finding be made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendations and any Decision and Entry adopting this Report and Recommendations; and

    5.    The case be terminated on the Court's docket.

January 23, 2024                                    *s/ Peter B. Silvain, Jr.*
                                                         Peter B. Silvain, Jr.
                                                         United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).